UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**WILSON CONSTRUCTION CO.**, an
Oregon corporation

        Plaintiff,

        v.

**SCHEFFLER NORTHWEST, INC.**, a
Nevada corporation; and **FIDELITY AND
DEPOSIT COMPANY OF MARYLAND**, a
Maryland corporation (Bond No.
PRF7645954),

        Defendants.

Case No. 3:16-cv-00173-YY

**FINDINGS AND
RECOMMENDATION**

**YOU, Magistrate Judge:**

## INTRODUCTION

Plaintiff, Wilson Construction Co. ("Wilson"), filed this action for breach of contract and other claims against one of its construction subcontractors, Scheffler Northwest, Inc. ("Scheffler") and its surety company, Fidelity and Deposit Company of Oregon. On or about July 14, 2015, Wilson was acting as general contractor on a construction project for Portland General Electric Company ("PGE") and contracted with Scheffler to install 25 Caisson Foundations for tubular steel poles.

Scheffler filed a Motion to Dismiss, Alternative Motion to Abate/Stay (docket #4), arguing in part that the court should dismiss the action under FRCP 12(b)(1) because it lacks

1 – FINDINGS AND RECOMMENDATION

subject matter jurisdiction to preside over a matter that is subject to a mandatory arbitration agreement.  At the hearing, Scheffler clarified that it is asking the court to stay the case and compel arbitration, pursuant to the Federal Arbitration Act ("FAA"), 9 USC § 3.  For the reasons set for the below, arbitration should be compelled and this action should be stayed.

## FINDINGS

### I. The FAA applies to this case.

The court must first decide whether the FAA applies to the contract in question.  The court may only compel arbitration of "[a] written provision in any maritime transaction *or a contract evidencing a transaction involving commerce*[.]"  9 USC § 2 (emphasis added).  According to the Supreme Court, the phrase "involving commerce" "signals Congress' intent to exercise its Commerce Clause power to the full."  *Allied–Bruce Terminix Cos. v. Dobson*, 513 US 265, 273 (1995).  The Court has broadly interpreted the phrase "evidencing a transaction involving commerce" to mean "the transaction must involve interstate commerce, but that the parties to the transaction need not have contemplated that the transaction had an interstate commerce connection."  *Rogers v. Royal Caribbean Cruise Line*, 547 F3d 1148, 1154 (9th Cir 2008), *cert. denied*, 557 US 920 (2009).

This case involves two contracts.  The first contract, executed on July 9, 2015, between PGE and Wilson, governs Wilson's "supervision, labor, services, materials, supplies, tools, and equipment" as general contractor for the Blue Lake Transmission Project ("Project").  Muth Decl. (docket #5), Ex 1, pp 1–41.  It is referred to by the parties as the "Prime Contract."  *Id*.  The second contract, signed on July 14, 2015, by Wilson and Scheffler, is the subcontract for "labor, transportation, supervision, equipment and materials necessary to install 25 Caisson Foundations for tubular steel poles" in exchange for payment of $1,113,329.00.  *Id*, pp 46–52.

The dispute stems from the subcontract. Complaint (docket #1, Ex A), ¶¶ 1–2. None of the parties dispute that the subcontract involves interstate commerce and falls under the FAA.

## II.  The incorporation clause of the subcontract is ambiguous.

The FAA mandates that written arbitration agreements involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 USC § 2. If an issue is subject to arbitration under a written agreement, the court is required to direct that issue to arbitration and stay the trial of the remaining issues until arbitration is complete. 9 USC § 3. However, a court may order parties to proceed to arbitration only upon "being satisfied that the making of the agreement for arbitration . . . is not in issue." 9 USC § 4; *see also United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 US 574, 582 (1960)("[A] party cannot be required to submit to arbitration any dispute which [it] has not agreed to submit."). "The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F3d 1126, 1130 (9th Cir 2000)(citing 9 USC § 4)(other citations omitted).

"When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally…should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 US 938, 944 (1995). Under Oregon law, a contract is ambiguous if it is susceptible to more than one reasonable interpretation. *Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 313, 129 P3d 773 (2006). When a contract is susceptible to more than one reasonable interpretation, there is a presumption in favor of arbitration. *Delasmutt v. Parker Grp. Invests., LLC*, 276 Or App 42, 46, 366 P3d 769, 772 (2016); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 US 614, 626 (1985)("any doubts concerning

the scope of arbitrable issues should be resolved in favor of arbitration"). Here, because the disputed portion of the subcontract is susceptible to more than one reasonable interpretation, it should be interpreted in favor of arbitration and Scheffler's motion should be granted.

The arbitration clause appears in Article 13 of the Prime Contract:

> 13.3 Within twenty-one (21) days after the completion or termination of a mediation pursuant to the prior paragraph without a full and complete mediated or other settlement, either party may demand that the claim or dispute be decided by binding arbitration. Notice of such demand for arbitration shall be given pursuant to the notice requirements of this Contract and the applicable rules of the AAA.

Muth Decl. (docket #5), Ex 1, p 11. Scheffler contends Wilson agreed to arbitrate disputes with Scheffler when it signed the subcontract that incorporated the entire Prime Contract by reference. The incorporation clause of the subcontract reads as follows:

> 1. <u>Reference to Prime Contract</u>: The Subcontractor shall comply fully with all provisions of the Prime Contract, which are applicable with Subcontractor's work, which provisions are by this reference incorporated into this Agreement. The Subcontractor's work shall include general and special provisions, plans, warranties and specifications and any addends, amendments or change orders to the contract documents.

*Id*, p 46. The Prime Contract is also attached to the subcontract as Appendix A.

Wilson argues that the incorporation clause is "very narrow" and cannot be read to broadly incorporate all provisions of the Prime Contract, including the arbitration clause in Article 13. Specifically, Wilson asserts that, by including the language "applicable with Subcontractor's work," the parties intended for the Prime Contract to be incorporated only to the extent it refers to the character and manner of the work performed by Scheffler. This interpretation is reasonable because the arbitration clause was not expressly incorporated into the subcontract by reference.

Furthermore, the the arbitration procedure set forth in the Prime Contract is arguably not "applicable" to the subcontractor's "work." Administrative procedures like those encompassed in Article 13 of the Prime Contract are not necessary to defining the nature and scope of the subcontractor's work to be performed under the contract.

In *Johnson W. Johnson, Inc. v. Basic Constr. Co.*, 429 F2d 764 (1970), the court interpreted similar contractual provisions in a dispute between a subcontractor and a prime contractor. The subcontract in that case provided in pertinent part as follows:

> The subcontractor…agrees to…perform all work required by the above mentioned contract (the prime contract)…for furnishing and performing painting, finishing, vinyl wall covering work, etc., in accordance with the requirements of the prime contract documents, plans, specifications, general…conditions, special conditions, addenda…and alternates…and as described more completely in Exhibit A…

*Id.* at 774-75. The contract between the owner and the prime contractor contained the following clause:

> The Contractor shall execute with each of his subcontractors… a written agreement which shall bind the latter to the terms and provisions of this contract insofar as such terms and provisions are applicable to the work to be performed by such subcontractors.

*Id* at 773.

The prime contractor contended that the subcontractor was not entitled to abandon the job without following the disputes clause contained in the prime contract. The court disagreed, construing the language "applicable to the work" to only "mean…the character and manner of the work to be done by the subcontractor." *Id.* at 773 (citing *Guerini Stone Co. v. P.J. Carlin Const. Co.*, 240 US 264, 277 (1916)("in the case of subcontracts, as in other cases of express agreements in writing, a reference by the contracting parties to an extraneous writing for a particular purpose makes it a part of their agreement only for the purpose specified"). It "did not

extend to require adherence by the subcontractors to administrative remedies and decisions thereunder by the parties to the prime contract." *Id.* at 772.  The court further noted that the disputes clause in the prime contract "was not specifically incorporated by reference" in the subcontract and "relate[d] to a procedural matter which is farther removed from 'the work' contemplated by the contracts."  *Id.* at 775; *see also Central Steel Erection Co. v. Will*, 304 F2d 548, 551 (9th Cir 1962)(although subcontractor agreed to be bound by terms of the main contract, the disputes clause applied only to the prime contractor and not the subcontractor); *McKinney Drilling Co. v. Collins Co.*, 517 F Supp 320, 328 (ND Ala 1981)("It is…well established law that references to the general contract and the plans and specifications in the manner done in the subcontract involved in this case only incorporate the provisions thereof which relate to the character and manner of work to be performed.").  Wilson argues that the similar language in this case – "applicable with Subcontractor's work" – should be construed in the same way.

Scheffler, however, proposes a reasonable alternative interpretation, which is that many disputes do in fact relate to the subcontractor's work.  In construction contexts, disputes, including the one at issue in this case, often arise with respect to the character and manner of work performed.  Thus, the arbitration clause in the Prime Contract is arguably "applicable" to the subcontractor's "work."  In fact, the arbitration clause of the Prime Contract specifically uses the term "work," recognizing that disputes will arise relating to the "work" and will be subject to arbitration:

> 13.1    If either party has a claim against or a dispute with the other party regarding *issues relating to any aspect of the Work* or the parties other rights or obligations under this Contract, the claimant shall give written notice thereof (a "Notice of Claim or Dispute") to the other party.

6 – FINDINGS AND RECOMMENDATION

Muth Decl. (docket #5), Ex 1, p 11 (emphasis added).

Additionally, the second sentence of the incorporation clause reads that the "Subcontractor's work shall include general…provisions" of the Prime Contract.  Muth Decl. (docket #5), Ex 1,  p 46.  The general provisions of the Prime Contract include Article 13, the arbitration clause.  By specifically mentioning the general provisions of the Prime Contract, which includes the arbitration clause, the subcontractor agreement arguably incorporates the arbitration clause.

As Scheffler contends, *Johnson W. Johnson* is distinguishable.  In *Gibbons-Grable Co. v. Gilbane Bldg. Co.*, 34 Ohio App 3d 170, 517 NE2d 559, 562 (1986), the court distinguished *Johnson W. Johnson* on the basis that it involved incorporation of a special disputes provision, not an arbitration provision.  *Id.* at 173.  The contractual agreement in *Gibbons-Grable* more specifically incorporated the "rights, remedies, and redress" contained in the prime contract and the case is therefore not directly applicable.  However, the court correctly recognized that, in "construing a contract providing for dispute resolution by arbitration," the court must be "mindful of the policy of the law to favor and encourage arbitration."  *Id*.  That same policy in favor of arbitration applies to this case.

The *A-C Constr.* case cited by Wilson is also distinguishable.  The contract in that case used the following limited language:  "All work to be done according to plans and specifications by Pacific Power & Light Co."  *A-C Constr., Inc v. Bakke*, 153 Or App 41, 46, 956 P2d 219, 222 (1998).  The Oregon Court of Appeals held that this language was insufficient to incorporate the entire prime contract, including conditions related to payment.  *Id.*  However, the incorporation clause in this case is much broader.  Rather than merely defining how the work was to be

7 – FINDINGS AND RECOMMENDATION

performed, as the contract in *A-C* did, it more broadly states that "all provisions" of the Prime Contract are "incorporated" to the extent they are "applicable with Subcontractor's work."

Thus, the incorporation clause of the subcontract is ambiguous in that it is susceptible to more than one reasonable interpretation. Because any doubt must be resolved in favor of arbitration, Scheffler's motion to compel arbitration should be granted and the case should be stayed.

## **RECOMMENDATIONS**

For the reasons stated above, and as conceded at the hearing on this matter, defendant Scheffler's Motion to Dismiss (part of docket #[4]) should be DENIED. Defendant Scheffler's Alternative Motion to Abate/Stay (part of docket #[4]) should be GRANTED, the court should compel arbitration, and the case should be STAYED pending the conclusion of arbitration proceedings.

## **SCHEDULING ORDER**

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due Tuesday, September 27, 2016. If no objections are filed, then the Findings and Recommendations will go under advisement on that date. If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

DATED September 8, 2016.

/s/Youlee Yim You
Youlee Yim You
United States Magistrate Judge